Harper J.
delivered the opinion of the Court.
We concur with the presiding Judge in these eases, that the place of captain of the magazine guard, is not such an office, that the writ of mandamus or an information in nature of a quo warranto, will lie to try the title to it. It is said in Jacob’s Law Dictionary, Title, Office, that there is1 ‘ difference between an office and an employment; for although every office is an employment, there are employments which do not come under the denomination of offices, such as an agreement to make hay, plough land, herd a flock, &c. which differ widely from that of steward of a manor.” And, indeed, without authority, it would be obvious enough, that there must be some such distinction.
The following seems to have been the origin of the employment in question. In the year 1793, the Governor of the State, in consequence of some public alarm, detailed an officer and a party of militia, for the purpose of guarding the magazine. This being found burdensome to the militia, the Governor employed a captain as he was termed, two non-commissioned officers, and eighteen privates, as a guard, whom he paid for the service out of the contingent fund placed at his disposal. This was communicated to the Legislature at the ensuing session, and the report of the committee, approving what had been done, and recommending the continuance of the guard, was concurred in *222 by both houses. The guard continued to be paid, as I understand, out of the contingent fund, up to 1797, when a resolu^011 °f the Legislature for increasing the guard was passed, and an appropriation made by law for paying it. From that time r * . . , 1 \ 8 „ , „ up to the present, appropriations have been annually made tor the same purpose; the guard being sometimes directed to be increased, and sometimes diminished. In 1799, the Comptrol*er General's Office was established, and the payment of the guard was put under his direction. By the resolution of 1829, the Legislature authorizes the commissioners of public buildings, to “ take charge” of the magazine guard, to deliver it to the troops $f the United States, if they will take the charge; and to discharge the guard, and again to enlist one, if the magazine should be abandoned by the United States troops. The magazine has never been occupied by the United States’ troops; but on the 1st of July, 1830, the commissioners, conceiving it to be within their powers, proceeded to remove the relator, Charles M. Gruber, and to appoint Samuel Champjin to the employment of captain of the guard. The relator had been commissioned by Governor Geddes, in 1820, “ during the pleasure of the executive.”
It is plain, that in the first institution of the guard, in 1793, the command of it was a mere employment. In virtue of his executive authority, the duty of protecting the magazine, as well as other public property, appertained to the Governor. The guard employed by him were his mere agents, whom he might have dismissed at any time. Their compensation, in the first instance, depended upon him alone. The Governor could not create an office. It is said by Lord Coke, 2 Inst. 533, that an office can only be created by act of Parliament. Whatever might be the royal prerogative in this respect, it is certain, that in this country, and under our institutions, the creation of an office must be an exercise of legislative authority, and cannot belong to the Executive. Nor do I perceive, that the various resolutions and acts of the Legislature, make any difference in the character of this employment. The resolution of 1794 merely approves what has been done, and gives the sanction of the Legislature to the Governor’s pursuing the same course in future. The various appropriations are for the purpose of enabling the 'guard to be kept up on the same footing. The manner *223 of paying it is changed, by charging the comptroller with the payment; but I do not perceive that this puts the guard upon a more certain footing.- I do not say, that the Legislature may not create an office, by appropriating a salary to an officer to be appointed, or elected in future ; but these appropriations were made with reference to an existing establishment, and do not purport to change the character of it.
If the legislature should create an office, and should make no ® provision for appointing or electing the officer, I .suppose the appointment would belong to the Governor, by virtue of his general Executive authority. It belongs to him to carry the laws into execution, when no other method of executing them is established. If no certain tenure of the office was prescribed, I suppose also it would be held at the pleasure of the Executive. Such is the construction given to the tenure of offices, held under the . government of the United States. The officers are the agents of the Executive, for the time being, to carry the laws into effect. But I doubt whether an employment, where there is no certain tenure, but which is held at the pleasure of the Executive, can be considered an office in the legal meaning of the term.
The cases shew, that an employment held at will, is not an office for which a mandamus will lie. Such is the case of the King v. Wheeler, 3 Keb. 360, which was an application to restore a sister of Saint Bartholomew’s Hospital; but said by the Court, “ non allocatur, these alms women being at will.” It is said in the marginal note to King v. Ward, 2 Str. 893, but only appears from what was urged and admitted in argument, that a mandamus lies for the principal register of the Archbishop’s Court to admit and swear his deputy, but it will not lie for the deputy himself, he being an officer at will. In the King v. Jotham, 3 T. R. 575, which was an application for a mandamus to restore the minister of a dissenting congregation, the applicant stated in the affidavit, that he conceived the congregation could not remove him, unless for ill behaviour, but that his employment was for life. Ashurst J. said it was not enough for the complainant to state his supposition, that he was elected for life, he ought to have shewn the grounds of it. In Bac. Abr. Mandamus, C. 1. it is said a mandamus lies to restore a town clerk, but not where the corporation have a right to elect him, durante bene plácito,
*224 Indeed it might be inferred from some of the older cases, that ^ was uecessal7 *be applicant should have a freehold in his 0:®ce- In the King v. the Church Wardens of Croydon, 5 T. R. 713, the application was for a mandamus to admita vestry c|er^. wjj0 was eiectecl annually by the inhabitants. Lord Kellyon said, “ this is not a fixed and permanent office for which a mandamus will lie ” In the King v. the Lord Mayor of London, 2 T. R. 180. Et'skine and Tomlins contended for the application, that a mandamus will lie for an office whether it concern private or public duties, if the officer have a certain tenure in it, and there are profits annexed to it, and the party has no other specific legal remedy. There are other cases bearing on the subject, but they would not lead to a different conclusion. Considering this not an office within the meaning of the law, but ail employment at the will of the Governor, we are of opinion, that if an usurpation has been committed, the redress must be with him; and that neither the mandamus nor quo warranto will lie. The usurpation is not upon the State but upon the Governor.
The view which has been taken supersedes the necessity of giving an opinion on the question, which was made with respect to the power of the commissioners of public buildings. The power to remove the officer is claimed for them under the resolution authorizing them to take charge of the magazine guard. This imports a general power to superintend and control; but might seem too loose an expression to authorize the removal of the officer, unless in the event of the magazine being delivered over to the United States’ troops. But when it is recollected, what the nature of the charge was, which the Governor had of it before, and that the object of the resolution must have been to transfer that authority to the commissioners, perhaps the construction may be fairly admitted. The motions in both cases are refused.